UNITED STATES of America, Appellee,

v.

**Roger James CLINE, Appellant.**

**No. 77–1815.**

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 9, 1978.

Decided Feb. 10, 1978.

Ronald R. Kappelman, Rapid City, S.D., for appellant.

David V. Vrooman, U. S. Atty., Sioux Falls, S.D., for appellee.

Before BRIGHT, STEPHENSON and HENLEY, Circuit Judges.

STEPHENSON, Circuit Judge.

This is a direct criminal appeal brought by appellant Roger James Cline. On the evening of March 27, 1977, appellant, a non-Indian, shot and killed Hobert Horse, an Indian, within the Pine Ridge Indian Reservation. Thus, the district court had jurisdiction under 18 U.S.C. § 1152.

At approximately 10:00 p. m. on March 28, 1977, appellant called Rapid City, South Dakota, and reported the shooting to Federal Bureau of Investigation Special Agent Ronald Grove. Appellant gave Agent Grove a signed statement in which he described the circumstances of the shooting and claimed that he had shot Horse in self-defense.

Appellant was subsequently charged in the indictment with second degree murder in violation of 18 U.S.C. § 1111. He was tried before a jury[1] and found guilty on September 8, 1977, of the lesser included offense of voluntary manslaughter in violation of 18 U.S.C. § 1112.[2]

On this appeal appellant has raised five issues for our consideration. After careful consideration of each claim of error we are convinced the conviction should be affirmed.

The first claim of error which will be addressed by this court is that the trial court erred in denying appellant's motion for judgment of acquittal. This argument is totally devoid of merit.

■ In essence, appellant alleges that his motion for judgment of acquittal should have been granted because he unequivocally stated that he fired at the decedent in self-defense and the prosecution offered no evidence to disprove this theory. In making this argument appellant ignores the strong circumstantial evidence presented by the prosecution to rebut appellant's claim of self-defense.

The victim was shot five times. The examining pathologist testified at trial that four of the five shots would have been fatal independently if decedent had not received immediate medical attention. One of the four shots would probably have been fatal under any circumstances. This shot entered the decedent's head from front to back, right to left and downward. The government demonstrated that this could not have been done if the decedent and

appellant had been standing as the appellant had stated. Confronted with this evidence, appellant stated that he probably shot decedent in the head after he was on the ground. Other testimony indicated that the decedent threatened to turn appellant over to the United States Marshals in Rapid City, South Dakota, if appellant did not give him some gas on credit. This testimony indicated that there was ill will between appellant and the decedent. Furthermore, appellant hid the decedent's body, he stated he cut up the gun into very small pieces and spread it around his driveway, and he did not report the shooting for approximately 24 hours although he had several opportunities to do so.

In assessing a motion for judgment of acquittal, either at the end of the government's case or after a jury verdict against the defendant, the evidence must be viewed in the light most favorable to the government. Furthermore, the government must be given the benefit of all reasonable inferences favorable to its case that may logically be drawn from the evidence. *See, e. g., United States v. Wisdom,* 534 F.2d 1306, 1309 (8th Cir. 1976); *United States v. Briddle,* 430 F.2d 1335, 1337–38 (8th Cir. 1970). It is clear that in the present case there was ample evidence to support the jury's determination that appellant was guilty of voluntary manslaughter.

■ The next appeal point asserted by appellant is that certain photographs were erroneously admitted into evidence at trial. Appellant timely objected on the grounds that the color slides would inflame the jury and that the prejudice to appellant's case resulting from introduction of the photos outweighed any probative value they might have.

Prior to the start of proceedings a hearing was held in the trial court's chambers and out of the presence of the jury. At this hearing, at which counsel for both sides and appellant were present, each of the photo-

---

1. The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, presided.

2. Appellant received a sentence of ten years imprisonment.

graphs taken by the pathologist was reviewed. Some of the photos were withdrawn by the prosecution and others were not received by the trial court because they were not relevant to any issue in the case. Those in question here were offered by the government and received by the trial court over the objection of appellant's counsel.

These photographs, which depicted the condition of the decedent's body, both at the time it was found and after it was cleaned up, are unpleasant to view. However, they were a substantial aid in illustrating the testimony of the pathologist concerning the path and trajectory of the bullets and for impeaching appellant's statement that he went back to the body three times because he did not know if Horse was dead. The pathologist's testimony was crucial to the prosecution's case for refuting the claim of self-defense advanced by appellant. The trial court found that the probative value of the photos outweighed any prejudicial effect to appellant. The admission of photos in a homicide case is a matter within the sound discretion of the trial court. *United States v. Cloudman*, 534 F.2d 123, 125 (8th Cir. 1976); *Giblin v. United States*, 523 F.2d 42, 44–45 (8th Cir. 1975), *cert. denied*, 424 U.S. 971, 96 S.Ct. 1470, 47 L.Ed.2d 739 (1976); *United States v. Delay*, 500 F.2d 1360, 1366 (8th Cir. 1974). That discretion was not abused in the present case.

■ Appellant next contends that prejudicial error was committed by the district court when it allowed in evidence an allegedly hearsay statement of the decedent through Delbert Pumpkinseed. Pumpkin-seed, who worked for appellant at his gas station, was allowed to testify as to a conversation that he overheard between appellant and the victim in which the decedent threatened to turn appellant over to the United States Marshals in Rapid City, South Dakota, if appellant did not give him some gas on credit.[3] No objection is raised as to the part of the testimony where Pumpkinseed related what appellant said; only that portion of the testimony which contains statements of the decedent is objected to.

Federal Rule of Evidence 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." The testimony of Pumpkinseed was not admitted into evidence to prove the truth of anything asserted therein. Rather it was offered simply to show that the conversation occurred. *See United States v. Glasser*, 443 F.2d 994, 1000 (2d Cir.), *cert. denied*, 404 U.S. 854, 92 S.Ct. 96, 30 L.Ed.2d 95 (1971); *Moody v. United States*, 376 F.2d 525, 530 (9th Cir. 1967). The testimony concerning the conversation related by Pumpkinseed was relevant to show that ill feelings existed between the decedent and appellant. Whether or not the decedent actually intended to turn appellant over to the United States Marshals, the fact that decedent made the statement is evidence from which the jury could infer that appellant had a motive for killing the decedent. What was said may have had a bearing on the state of mind and the actions of appellant. Appellant's state of mind was, of course, relevant in determining whether the killing was second degree murder, man-

3. The record reflects the following questions by the prosecution and answers by Pumpkinseed:

Q. What did Roger say and what did Hobert say and then what did Roger say?
A. Hobert came to get some gas—
Q. Okay.
A. —and Roger said he was tired of giving him gas on credit. Then Hobert says he is going to come up here and turn him in.
Q. Come up here to Rapid City and turn him in?
A. Yes.
Q. Did he say to whom he was going to turn him in?
A. To the United States Marshals.
Q. As I understand it, Roger was complaining about giving gas and Hobert said, "If you don't give me gas, I am going to Rapid City and turning you in to the United States Marshal"?
A. Yes.
Q. Did he give him gas then?
A. Yes.
Q. And give him some money?
A. Yes.

slaughter, or self-defense. Consequently, the testimony was non-hearsay and admissible. *See* Fed.R.Evid. 801(c); C. McCormick, McCormick on Evidence § 249 (2d ed. E. Cleary 1972). *See also* J. Weinstein & M. Berger, Weinstein's Evidence ¶ 803(3)[02] at 803–94–95 (1976). *Cf. United States v. Adcock,* 558 F.2d 397, 403–04 (8th Cir.), *cert. denied,* —— U.S. ——, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977).

The inability to assess the decedent's credibility was immaterial. The question of whether the words were spoken or not was a matter within Pumpkinseed's knowledge. Since he was under oath and subject to cross-examination no hearsay dangers were posed by his testimony. Since decedent's statement was relevant regardless of its truth, there was no need to evaluate his credibility and the absence of safeguards for his credibility was of no consequence. *See,* McCormick, *supra,* § 246.

▬ In his initial statement to the FBI appellant said that he used a .38 caliber weapon. According to his statement he took the gun home and cut it into very small pieces. At trial appellant also testified that he destroyed the weapon he used. In cross-examination, appellant for the first time, stated that the gun belonged to Lloyd Deckert, who had given the gun to appellant to sell for him. Appellant could not remember if he had called Deckert and told him that he had sold the gun.[4]

The prosecution called Lloyd Deckert as a rebuttal witness. He testified that he had left his .38 caliber revolver with appellant for appellant to sell and that appellant called him concerning the gun before appellant turned himself in to the FBI. Deckert further testified that appellant told him that the gun had been sold and that Deckert could collect for it any time.

Appellant claims that Deckert should not have been allowed to testify on rebuttal to impeach appellant because appellant had not made a prior inconsistent statement and Deckert's testimony was not sufficiently relevant because the prosecution's case would not have been adversely affected if the inconsistent statement had been allowed to stand. Yet appellant also takes the seemingly contradictory position that the trial court committed plain error in not giving an instruction to the jury informing them that the statement could be used only for impeachment purposes, and not substantive evidence, because "there can be no doubt but that his testimony was extremely damaging to the defendant."

Fed.R.Evid. 613(b) provides in part "Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same * * * ." In *United States v. Sisto,* 534 F.2d 616, 622 (5th Cir. 1976), the Fifth Circuit, quoting from McCormick, *supra,* § 34, stated "[I]f on cross-examination the witness has denied making the statement, *or has failed to remember it,* the making of the statement may be proved by another witness." (emphasis added.) *See also United States v. Rogers,* 549 F.2d 490, 496 (8th Cir. 1976), *cert. denied,* 431 U.S. 918, 97 S.Ct. 2182, 53 L.Ed.2d 229 (1977); *Williamson v. United States,* 310 F.2d 192, 198–99 (9th Cir. 1962); McCormick, *supra,* §§ 34, 37; Weinstein, *supra,* ¶ 613[04]. Moreover, the last sentence in Rule 613(b) provides that no foundational inquiry is required when the statement is one made by a party-opponent. *See* Weinstein, *supra,* ¶ 613[01] at 613–5.

Furthermore, the testimony by Deckert was admissible as substantive evidence because it qualified as an admission by appel-

---

4. The following exchange occurred between appellant and the prosecuting attorney:

> Q. Isn't it a fact, Mr. Cline, that on Sunday night when you got back you called Lloyd Deckert and said, "I sold your gun today"?
> A. No. I don't think I did.
> Q. You don't think you told Lloyd Deckert that.
> A. I don't think so. I don't know, though.

> Q. Do you now deny you called Lloyd Deckert Sunday night after the killing and told him, "I sold your gun today"?
> A. No. I don't deny it. I just don't know.
> Q. Well, you knew you just cut the gun up.
> A. I had cut the gun up.
> Q. But you don't remember if you then called Lloyd Deckert and told him?
> A. I don't remember hardly anything that happened.

lant under Fed.R.Evid. 801(d)(2) and was relevant. Of course, the trial court has broad discretion in determining relevancy of proposed evidence. *See United States v. Taylor,* 562 F.2d 572, 575 (8th Cir. 1977); *United States v. Johnson,* 516 F.2d 209, 214 (8th Cir.), *cert. denied,* 423 U.S. 859, 96 S.Ct. 112, 46 L.Ed.2d 85 (1975); *United States v. Mitchell,* 463 F.2d 187, 191 (8th Cir. 1972), *cert. denied,* 410 U.S. 969, 93 S.Ct. 1449, 35 L.Ed.2d 705 (1973); Fed.R.Evid. 401. This testimony was relevant as direct evidence on the issue of concealment. The jury could have found that it showed that appellant not only had the presence of mind to destroy the weapon but also the presence of mind to concoct a story which would explain the weapon's disappearance to the owner. Appellant's defense was that he was too scared to call the police and from Deckert's testimony the jury could have inferred that appellant was not afraid, but rather was trying to cover up the crime. The testimony was not hearsay because it was appellant's own statement which was being offered against him. Fed.R.Evid. 801(d)(2)(A). *See United States v. Scott,* 511 F.2d 15, 20 n. 23 (8th Cir.), *cert. denied,* 421 U.S. 1002, 95 S.Ct. 2403, 44 L.Ed.2d 670 (1975); McCormick, *supra,* § 262; Weinstein, *supra,* ¶¶ 801(d)(2)[01], 801(d)(2)(A)[01]. Thus, the district court did not commit error in allowing Deckert to testify or in failing to instruct the jury that Deckert's testimony could be considered only for impeachment purposes.

■ Appellant's most serious contention of trial court error involves the volunteered statement of the prosecution witness Mary Horse, decedent's former wife. On direct examination the following exchange occurred:

Q. Mary, do you recall an incident where Hobert brought some money home?

A. Yes.

Q. Would you tell the Court and the jury what happened?

A. He came home that night and he said Roger Cline gave him—paid him to burn that station down, and he was going to give him $500 then.

At this time defense counsel out of the presence of the jury moved for a mistrial on the grounds that the statement was hearsay and violated appellant's Sixth Amendment right to confront the witnesses against him. Defense counsel conceded that the government had not attempted to elicit this comment. Although the trial court agreed that the comment was inadmissible hearsay it denied the motion for mistrial.

Upon returning to the courtroom the trial court admonished the members of the jury to disregard the statement of Mary Horse without highlighting it. The prosecuting attorney then explained, albeit clumsily, to the witness in the presence of the jury that she was not to testify about conversations she had with the deceased when appellant was not present.[5] No objection or motion for a mistrial was made by appellant at this point.

"The allowance of a mistrial is a matter for the trial court's discretion." *United*

---

**5.** The following exchange took place between the prosecuting attorney and Mary Horse:

Q. (By Mr. Vrooman) Mary, remember yesterday when I talked to you I said that conversations you had with Hobert, you couldn't talk about them, that they were hearsay; do you remember that? Do you remember I asked you not to talk about those things?

A. Yeah.

Q. If they had any conversations, I don't want you to blurt them out. Just answer my question, that's all.

A. That's how I got the money.

Q. I understand that, but you can't talk about conversations when Mr. Cline wasn't there. That's hearsay and it's not admissible

in court. Hobert isn't here obviously, so we can't cross-examine him. Don't volunteer any conversations.

Let's pass over that time when you got the money.

The government was attempting to show through Mary Horse's testimony that Hobert Horse received money from appellant on numerous occasions. However, in oral argument before this court the prosecuting attorney stated that he had specifically instructed Mary Horse the previous day not to mention the reason why appellant had given the money to Hobert. The prosecuting attorney further informed this court that after the trial court had made its ruling in chambers all counsel and appellant returned directly to the courtroom.

*States v. Scott, supra*, 511 F.2d at 20. In *Scott*, this court affirmed the trial court in its refusal to grant a mistrial when a prosecution witness volunteered a statement which improperly introduced evidence of other crimes before the jury. In the present case, as in *Scott*, there was no hint of prosecutorial instigation or participation and the trial court promptly instructed the jury to disregard the comment.

After reviewing all the evidence in this case we are convinced that the evidence supporting a verdict of voluntary manslaughter is very strong and the trial court did not abuse its discretion in refusing to grant a mistrial. *See United States v. Young*, 553 F.2d 1132, 1136 (8th Cir.), *cert. denied*, 431 U.S. 959, 97 S.Ct. 2686, 53 L.Ed.2d 278 (1977); *United States v. Scott, supra*.

Affirmed.

The jury was already in the jury box and the witness was on the stand. Thus, he had no other opportunity to reiterate to Mary Horse that she was not to mention the reason Hobert had received the money.