STATE OF CONNECTICUT *v.* JORGE ALVAREZ
(13722)

PETERS, C. J., CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued June 5—decision released August 21, 1990

*Milo J. Altschuler,* for the appellant (defendant).

*Leon F. Dalbec,* deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *David P. Gold,* assistant state's attorney, for the appellee (state).

CALLAHAN, J. The defendant, Jorge Alvarez, was convicted by a jury of the crime of murder in violation of General Statutes § 53a-54a.[1] The trial court sentenced him to a term of life imprisonment. On appeal, the defendant challenges four evidentiary rulings by the trial court. He first contends that the trial court should have admitted a statement by Kenneth Hazard, a witness to the shooting that caused the victim's death, to Joseph Greene, a police officer. In addition, he argues

[1] "[General Statutes] Sec. 53a-54a. MURDER DEFINED. AFFIRMATIVE DEFENSES. EVIDENCE OF MENTAL CONDITION. CLASSIFICATION. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime.

"(b) Evidence that the defendant suffered from a mental disease, mental defect or other mental abnormality is admissible, in a prosecution under subsection (a), on the question of whether the defendant acted with intent to cause the death of another person.

"(c) Murder is punishable as a class A felony in accordance with subdivision (2) of section 53a-35a unless it is a capital felony."

that the court should have excluded: (1) the contents of a conversation between the defendant and Melvin Poindexter; (2) the prior written and tape recorded statements of a witness to the shooting incident, Pamela McCrea; and (3) the testimony of Janette Lawrence. We conclude that the trial court did not abuse its discretion in ruling as it did on these evidentiary claims, and therefore affirm the court's judgment.

The jury could reasonably have found the following facts. At approximately 2 a.m. on January 16, 1988, the victim, Eugene Mabery, was returning home from a friend's house when he passed by the Oasis Club in New Haven. While outside the club, Mabery became involved in an altercation with Johnnie Baker. A crowd of spectators, including Pamela McCrea and Kenneth Hazard, gathered to watch the fight. After the fighting was halted, and while Mabery was attempting to retrieve a plastic bag containing his gym clothes, the defendant drew a gun and shot him in the upper body. Mabery immediately bent over, exclaimed that he had been shot, gathered his belongings and ran from the scene. A few days later, on January 23, 1988, his body was found in a frozen condition in the backyard of a nearby home. He had died from a gunshot wound to his chest.

I

The defendant first argues that the trial court should have allowed Officer Joseph Greene, an investigating police officer, to testify as to a statement made to him by Kenneth Hazard, a witness to the shooting incident. As to this claim, the record reveals the following relevant facts. During the cross-examination of Greene, the defendant attempted to elicit testimony from him as to the details of his investigation. In an offer of proof, outside the presence of the jury, Greene testified that Hazard had told him that he thought he saw a person

named Rasheem shoot the victim. The trial court excluded the proffered testimony as hearsay, an out-of-court statement offered to prove the truth of the matter asserted therein.

### A

The defendant maintains that, under our decision in *State* v. *Echols,* 203 Conn. 385, 392, 524 A.2d 1143 (1987), a hearsay statement that establishes that a third party, and not the defendant, is culpable is admissible as long as the defendant shows some evidence that directly connects the third party to the crime. Thus, he argues that once he had established the relevancy of the statement, he could offer the statement for the truth of the matter asserted therein. We disagree.

The first criteria of admissibility is that the statement made by Hazard must be relevant. "We have often stated that '[e]vidence is admissible when it tends to establish a fact in issue or to corroborate other direct evidence in the case. . . . "One fact is relevant to another fact whenever, according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable. . . . *Unless excluded by some rule or principle of law,* any fact may be proved which logically tends to aid the trier in the determination of the issue." *Pope Foundation, Inc.* v. *New York, N.H. & H.R. Co.,* 106 Conn. 423, 435, 138 A. 444 (1927).' *State* v. *Towles,* 155 Conn. 516, 523, 235 A.2d 639 (1967)." (Emphasis added.) *State* v. *Echols,* supra, 393.

A "defendant may introduce evidence which indicates that a third party, and not the defendant, committed the crime with which the defendant is charged." Id., 392. We have stated that such evidence is admissible as long as " ' "there is some evidence which *directly*

*connects* that third party with the crime." (Emphasis added.) *State* v. *Kinsey,* [173 Conn. 344, 348, 377 A.2d 1095 (1977)]. . . .' *State* v. *Giguere,* [184 Conn. 400, 405, 439 A.2d 1040 (1981)." *State* v. *Delossantos,* 211 Conn. 258, 270, 559 A.2d 164, cert. denied, 493 U.S. 866, 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989). Evidence that showed that Rasheem, and not the defendant, had shot the victim thus is relevant and would be admissible *provided the evidence was not excluded by some other rule or principle of law.*[2]

The determination that the proffered testimony is relevant, therefore, does not end the inquiry. Contrary to the defendant's claim, the court must also determine whether the statement falls within any recognized exception to the hearsay rule. *State* v. *Acquin,* 187 Conn. 647, 680, 448 A.2d 163 (1982), cert. denied, 463 U.S. 1229, 103 S. Ct. 3570, 77 L. Ed. 2d 1411 (1983). In the present case, the trial court determined that it did not.

We have long recognized that a hearsay statement is admissible only if it falls within an exception to the hearsay rule. *State* v. *Sharpe,* 195 Conn. 651, 664, 491 A.2d 345 (1985); *State* v. *Acquin,* supra, 680; *Izzo* v. *Crowley,* 157 Conn. 561, 563, 254 A.2d 904 (1969). The defendant sought to introduce Hazard's statement, through Greene, for the truth of the matter asserted therein, i.e., that Rasheem shot the victim. The value of this statement depends upon the credibility of Hazard. "The reason for the general rule which excludes hearsay evidence unless it comes within one of the recognized exceptions is basically that the sanction of an oath and the test of cross-examination are absent; and the exceptions to the rule have been fashioned

---

[2] The trial court did not exclude the evidence on the basis that it was irrelevant. Because we agree with the trial court's ruling, we need not address further the question of relevancy.

where the statements are made under conditions judged to render them equal in reliability and trustworthiness to those which are made under the sanctions described." *State* v. *Barlow,* 177 Conn. 391, 396, 418 A.2d 46 (1979); see *State* v. *Hernandez,* 204 Conn. 377, 389–94, 528 A.2d 794 (1987); *State* v. *Gold,* 180 Conn. 619, 630–31, 431 A.2d 501, cert. denied, 449 U.S. 920, 101 S. Ct. 320, 66 L. Ed. 2d 148 (1980).

"Evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." *State* v. *Hernandez,* supra, 390. We conclude that the trial court did not abuse its discretion by not admitting Greene's proposed testimony as to Hazard's hearsay statement merely because it was relevant.

### B

The defendant now asserts for the first time, on appeal, that Greene's testimony concerning Hazard's statement falls within the residual exception to the hearsay rule. We have stated that hearsay may be admitted into evidence, even if it does not fall within a traditional hearsay exception, if (1) "there was a reasonable necessity for the admission of the statement," and (2) "the statement was supported by the equivalent guarantees of reliability and trustworthiness essential to the other evidence admitted under the traditional hearsay exceptions." *State* v. *Sharpe,* supra, 664.

"On appeal, [however,] we will not review an evidentiary claim not raised below. ' " 'Once counsel states the authority and ground of his objection, any appeal will be limited to the ground asserted.' *Borucki* v. *MacKenzie Bros. Co.,* 125 Conn. 92, 3 A.2d 224 (1938); *State* v. *Rado,* 172 Conn. 74, 81, 372 A.2d 159 (1976) [cert. denied, 430 U.S. 918, 97 S. Ct. 1335, 51 L. Ed. 2d 598 (1977)]; *State* v. *Johnson,* 166 Conn. 439, 444–45,

352 A.2d 294 (1974); *Salvatore* v. *Hayden,* 144 Conn. 437, 443, 133 A.2d 622 (1957)." *State* v. *Adams,* 176 Conn. 138, 144–45, 406 A.2d 1 (1978). . . . ' *State* v. *Brice,* 186 Conn. 449, 457, 442 A.2d 906 (1982) . . . ." *State* v. *Moye,* 214 Conn. 89, 97–98 n.6, 570 A.2d 209 (1990). Because the defendant failed to raise the residual exception at trial and the trial court did not have the opportunity to consider that ground for admission of Greene's testimony, we will not address this claim of the defendant on appeal.[3]

## II

The defendant next argues that the trial court should have excluded a portion of the testimony of Richard King because it was irrelevant and because it was inadmissible hearsay. The following facts are relevant to this claim. King testified that, approximately one week before the victim's body was found, he had gone to Melvin Poindexter's apartment "to get some cocaine." When King arrived, the defendant and Rasheem were there.

During direct examination, the state inquired as to the contents of the conversation between the defendant and Poindexter. Over the defendant's objection, the following colloquy transpired:

"Q. Tell the jury what Mr. Poindexter said to Mr. Alvarez. . . .

---

[3] Even if we were to address the defendant's claim, we are unpersuaded that this statement falls within the residuary exception to the hearsay rule. "Wigmore explains that the necessity requirement is met when, unless the hearsay statement is admitted, the facts it contains may be lost, either because the declarant is dead or otherwise unavailable, or because the assertion is of such a nature that evidence of the same value cannot be obtained from the same or other sources. [5 J. Wigmore, Evidence (Chadbourn Rev. 1974) § 1421.]" *State* v. *Sharpe,* 195 Conn. 651, 665, 491 A.2d 345 (1985). The record is devoid of any showing as to the necessity for the admission of this statement. Neither the state nor the defendant called Hazard as a witness and the defendant has failed to make any showing that Hazard was unavailable at the time of trial.

"A. He said that he had fronted Gene a key of cocaine.

"Q. He said he fronted someone named Gene—

"A. A key of cocaine.

"Q. That was a statement made by Mr. Poindexter to the defendant?

"A. Yes.

"Q. And did he give a last name of Gene?

"A. No.

"Q. What happened? Continue with what happened at the table?

"A. So then he said if Gene don't have his money he wants him to kill him. So then he said all right, I take care of it if it come down to that.

"Q. Who said I will take care of it if it comes down to that?

"A. Jorge Alvarez.

"Q. What did Mr. Poindexter then provide Mr. Alvarez?

"A. A pistol, some cocaine and some money."

King testified that Poindexter had given the defendant a black pistol, two to three ounces of cocaine and fifteen hundred dollars. The defendant placed the items in his pocket.

King further testified that he had seen the defendant again approximately three days before the defendant was arrested. According to King's testimony, the defendant had told King that "Johnn[ie] Baker and Gene started fighting" and then the defendant pulled out his gun and shot "Gene." The defendant then added that Poindexter would have "to pay him from now on."

The defendant objected to the admission of King's testimony that Poindexter told the defendant that he had wanted "Gene" killed because "Gene" owed Poindexter money for a kilo of cocaine. The defendant contends that the statement was not relevant because Poindexter was referring to a person named "Gene" and the state failed to show that "Gene" was the victim, *Eugene* Mabery. Specifically, the defendant maintains that there was no evidence that the victim knew Poindexter or was "involved in the use or sale of drugs."

The trial court has broad discretion in determining the relevancy of evidence. *Dunham* v. *Dunham,* 204 Conn. 303, 324, 528 A.2d 1123 (1987); *State* v. *Fritz,* 204 Conn. 156, 167, 527 A.2d 1157 (1987). "Rulings on such matters will be disturbed on appeal only upon a showing of a clear abuse of discretion. *State* v. *Boucino,* [199 Conn. 207, 225, 506 A.2d 125 (1986)]; *State* v. *Falcon,* 196 Conn. 557, 566, 494 A.2d 1190 (1985). We have consistently held that 'evidence is relevant only when it tends to establish the existence of a material fact or to corroborate other direct evidence in the case. *State* v. *Sharpe,* [supra, 659]; *State* v. *Mastropetre,* 175 Conn. 512, 517, 400 A.2d 276 (1978).' *State* v. *Talton,* 197 Conn. 280, 285, 497 A.2d 35 (1985)." *State* v. *Fritz,* supra, 167–68.

The record reveals that the state presented sufficient evidence to provide logical support for the state's contention that the "Gene" mentioned in the conversation between Poindexter and the defendant was, in fact, Eugene Mabery. First, the state presented other testimony by King wherein he stated that the *defendant* had referred to the victim as "Gene." Specifically, King testified that the defendant had told him that he had killed "Gene" while "Gene" and Johnnie Baker were fighting. Also, in testimony presented at trial, at least

three witnesses testified as to the fight between the victim and Johnnie Baker. Further, Wilbert Lindsey, an old friend of the victim, testified that the victim's nickname was "Gene." We conclude that the trial court did not abuse its discretion in determining that the evidence was sufficiently relevant to be admissible.

The defendant also objects to the admission of this testimony on hearsay grounds. To analyze this claim we must examine the component parts of the colloquy. We note initially that the defendant does not object to that portion of the statement in which King testified that he had observed Poindexter provide the defendant with a pistol, cocaine and some money. Further, the defendant's response to Poindexter was admissible as an admission, a recognized exception to the hearsay rule. *State* v. *Stepney,* 191 Conn. 233, 250, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984).

The defendant objects to the court's admission of those statements in the colloquy, attributed to Poindexter, in which Poindexter told the defendant he wanted the victim killed because the victim owed Poindexter some money for a kilo of cocaine. In contrast, the state contends that these statements were admissible because they were offered to show their effect upon the defendant.

If the state had offered the statements for the truth of the facts contained therein, the statements would have been inadmissible, unless they fell within an exception to the hearsay rule. " 'A statement that is offered to show its effect upon the hearer, however, is not hearsay. *State* v. *Hull,* 210 Conn. 481, 499, 556 A.2d 154 (1989); *State* v. *Silveira,* [198 Conn. 454, 473, 503 A.2d 599 (1986)]; *State* v. *Zdanis,* 173 Conn. 189, 192 n.1, 377 A.2d 275 (1977).' *State* v. *John,* [210 Conn. 652, 680, 557 A.2d 93, cert. denied, 493 U.S. 824, 110 S.

Ct. 84, 107 L. Ed. 2d 50 (1989)]." *State* v. *Robinson,* 213 Conn. 243, 258–59, 567 A.2d 1173 (1989); C. Tait & J. LaPlante, Handbook of Connecticut Evidence (2d Ed.) § 11.3.3, p. 324. As the trial court ruled, the state offered Poindexter's statements, not for the truth of the matter asserted therein, but rather to show the effect of the statements upon the defendant. The jury could infer from the statements that the defendant had a motive to kill the victim. *United States* v. *Cline,* 570 F.2d 731, 734 (8th Cir. 1978). This is not hearsay. *State* v. *Hull,* supra, 498–99; *State* v. *Gonzales,* 186 Conn. 426, 429, 441 A.2d 852 (1982); C. McCormick, Evidence (3d Ed.) § 249.

It is not material whether Poindexter in fact wanted the victim killed or whether in fact the victim owed Poindexter money. Because the testimony was offered to show the defendant's motive for shooting the victim, its admissibility does not depend upon the truth of the statements uttered by Poindexter. *United States* v. *Cline,* supra.[4] The inability to assess the credibility of Poindexter's statements was, therefore, immaterial. "The question of whether the words were spoken or not" was a matter within King's knowledge. Id., 735. "Since he was under oath and subject to cross-examination no hearsay dangers were posed by his testimony." Id.; *United States* v. *Hicks,* 848 F.2d 1, 3 (1st Cir. 1988).

"Out-of-court statements to a person are admissible to show his state of mind where his mental state is relevant. *State* v. *Brokaw,* 183 Conn. 29, 32, 438 A.2d 815

---

[4] If the defendant was concerned that the jury might be inclined to consider the testimony for its inappropriate hearsay purposes, he could have requested the trial court, after the testimony had been given, to instruct the jury as to the limited use for which the testimony was being offered. See *State* v. *Hull,* 210 Conn. 481, 499–500, 556 A.2d 154 (1989); C. McCormick, Evidence (3d Ed.) § 249. He did not do so.

(1981); *Zenik* v. *O'Brien,* 137 Conn. 592, 598, 79 A.2d 769 (1951). A person's 'state of mind' can be shown 'from what he heard as well as from what he saw, even though what he heard would be normally classified as hearsay. . . . ' (Citations omitted.) *Zenik* v. *O'Brien,* supra, 598." *State* v. *Jones,* 205 Conn. 723, 731, 535 A.2d 808 (1988). "The defendant's state of mind was relevant to specific intent and to motive; and, therefore, the statements did not constitute hearsay." *State* v. *Hull,* supra, 502.

## III

The defendant also challenges the trial court's ruling that Pamela McCrea's prior inconsistent statement, which was both in writing and tape recorded, could be admitted for substantive purposes. The following facts are relevant to this claim. Approximately one week after the victim's body was found, Greene telephoned McCrea to determine the whereabouts of her sister, Wanda Mullins. Mullins was the girlfriend of Rasheem, who had been present at the Oasis Club on the night of the murder. After Greene identified himself, McCrea told him that she had been at the Oasis Club on the night of the shooting and that she had seen the defendant shoot the victim. Later, McCrea went to the police station and gave a formal statement to the police. The statement was tape recorded and thereafter immediately transcribed into writing. McCrea signed the statement that same day, January 29, 1988. In her statement, McCrea said she had seen the defendant pull out a gun, put a hat over it and shoot the victim.

On direct examination at trial the state questioned McCrea as to what had occurred at the Oasis Club on the night of January 15, 1988. McCrea testified that she had been at the Oasis Club that night and that, around closing time, she had witnessed a fistfight between the victim and Baker. She also stated that,

after the fight broke up, the victim was shot while attempting to retrieve his belongings. Contrary to her previous statement, however, McCrea testified that she had not seen who shot the victim. Further, in contrast to her prior statement, she denied that she had seen the defendant with a gun. Having unsuccessfully sought to refresh McCrea's recollection, the state's attorney then offered her prior written inconsistent statement into evidence for substantive purposes under *State* v. *Whelan,* 200 Conn. 743, 753, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986). The defendant objected, claiming that, unlike the witness in *Whelan,* McCrea had not lost her memory of the events. The trial court overruled the defendant's objection. Later, the state also introduced McCrea's tape recorded statement into evidence.

We have recognized that a prior written inconsistent statement can be admitted for substantive purposes if the following conditions have been met: (1) the statement is signed by the declarant; (2) the declarant has personal knowledge of the facts stated; and (3) the declarant testifies at trial and is available for cross-examination. *State* v. *Almeda,* 211 Conn. 441, 452, 560 A.2d 389 (1989); *State* v. *Ruiz,* 202 Conn. 316, 329–30 n.3, 521 A.2d 1025 (1987); *State* v. *Whelan,* supra, 753. A prior tape recorded statement, satisfying these conditions, is also admissible for substantive purposes. *State* v. *Whelan,* supra, 754 n.9. While "the requirement that prior statements be written and signed by the declarant is not an absolute guaranty of reliability, it does provide significant assurance of an accurate rendition of the statement and that the declarant realized it would be relied upon." Id., 754.

The defendant does not argue that the criteria established in *State* v. *Whelan,* supra, have not been satisfied, but rather contends that McCrea's statement

was inherently unreliable and therefore inadmissible. He argues that the time lapse between the date of the shooting incident, January 16, 1988, and the date McCrea gave her statement to the police, January 29, 1988, undermined its reliability. Further, he claims that because McCrea was friendly with Rasheem, a suspect in the case, her statement "did not have the same indicia of reliability" as the statement in *Whelan.*

We conclude that the trial court did not abuse its discretion in admitting McCrea's prior written and tape recorded statements into evidence for substantive purposes. McCrea gave her statement to the police voluntarily based upon her personal knowledge of the events.[5] Her statement was given only two weeks after the incident, "long before the witness' memory [of such an event] might have faded." Id. Also, McCrea gave her statement to a police officer and, if the statement was untrue, faced possible prosecution for falsely reporting an incident to the police. General Statutes § 53a-180. Further, the declarant testified at trial and was available to be extensively cross-examined by the defendant. Moreover, there is nothing in the record to indicate that the trial court restricted the defendant's cross-examination of McCrea for bias, motive, interest or prejudice. See *State* v. *Moye,* 214 Conn. 89, 94, 570 A.2d 209 (1990); *State* v. *Vitale,* 197 Conn. 396, 402, 497 A.2d 956 (1985). The defendant, therefore, had the opportunity to show during cross-examination or through the introduction of extrinsic evidence that McCrea was biased towards Rasheem. *Fairbanks* v.

---

[5] Although during cross-examination the witness testified that she did not see the defendant with a gun, her signed statement states:

"Q. How many times had you seen the gun in [the defendant's] hand?

"A. Twice.

"Q. Could you please go into detail when you say you saw it twice?

"A. The first time [the defendant] pulled the gun out and then he put it back under his pants and the second time he pulled it out again this time with a hat over it and that's when he shot."

*State,* 143 Conn. 653, 657, 124 A.2d 893 (1956); C. Tait & J. La Plante, supra, § 7.20.1, p. 191. "The jury had an adequate opportunity to observe and examine the demeanor of the witness, to hear the testimony and to assess [her] credibility." *State* v. *Whelan,* supra, 755. Consequently, the jury was free to assess the reliability of McCrea's prior statement and to believe McCrea's trial testimony, her prior statement, or neither.

The defendant contends, however, that he was deprived of his constitutional right to cross-examine McCrea because he could not effectively question her as to the details of her prior inconsistent statement because, at trial, she testified that the prior statement was false. Because he did not assert this constitutional claim at trial, the defendant presumably seeks review under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973). "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

"The confrontation clause gives the accused the right 'to be confronted with the witnesses against him.' U.S. Const., amend. VI. . . . ' "[T]he Confrontation Clause guarantees only 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense

might wish.' " *Kentucky* v. *Stincer,* 482 U.S. 730, 739 [107 S. Ct. 2658, 96 L. Ed. 2d 631] (1987), quoting [*Delaware* v. *Fensterer,* 474 U.S. 15, 20, 106 S. Ct. 292, 88 L. Ed. 2d 15 (1985)] (emphasis added); *Delaware* v. *Van Arsdall,* 475 U.S. 673, 679 [106 S. Ct. 1431, 89 L. Ed. 2d 674] (1986); *Ohio* v. *Roberts,* 448 U.S. 56, 73 n.12 [100 S. Ct. 2531, 65 L. Ed. 2d 597] (1980).' *United States* v. *Owens,* 484 U.S. 554, 559, 108 S. Ct. 838, 98 L. Ed. 2d 951 (1988)." *State* v. *Moye,* supra, 94.

The record reveals that the defendant had an unrestricted opportunity to cross-examine the witness. The constitutional standard was therefore satisfied. During his cross-examination of McCrea, the defendant conducted a wide-ranging inquiry into the circumstances under which her statement to the police had been given and why it was inconsistent with her trial testimony. McCrea testified that, when she had given her statement to the police, Greene had provided her with a script and that she had simply read the script into the tape recorder. Because Greene had provided her with the facts, she claims, she had just assumed that they were true and repeated them. She had agreed to the statements, she said, only because she had "wanted to get out of there." She testified, moreover, that she had not actually seen who had shot the victim. Defense counsel also elicited from McCrea that her trial testimony was consistent with her testimony at the probable cause hearing the previous year. Under the circumstances, a violation of the defendant's right to confrontation does not clearly exist and we decline to review further the defendant's *Evans* claim. *State* v. *Golding,* supra, 239–40.

IV

The defendant next argues that the trial court should not have allowed Janette Lawrence to testify as to remarks made by McCrea during a recess in McCrea's

testimony. The following facts are relevant to this issue. During direct examination, McCrea had admitted that she did not want to be in court testifying. She further remarked that she had been upset when she had discovered that the New Haven Register had published her name and address in an article concerning the shooting incident. She also expressed her concern about the continued media attention the case was receiving.

The next day, the state offered the testimony of Lawrence to impeach the credibility of McCrea's trial testimony. In an offer of proof, outside the presence of the jury, Lawrence testified that she had approached McCrea during the recess in her testimony because McCrea appeared afraid. Lawrence testified to the following: "And I said, baby, don't be afraid, just tell the truth. And [McCrea] said, I want to tell the truth, she said, I want to help her but I can't."[6] Lawrence then related to the court that McCrea had told her that she had been receiving phone calls threatening her life, and that notes had been left on her car. Lawrence also testified that McCrea had expressed concern that newspaper reporters were present in the courtroom and that they would publish whatever she said.

The trial court concluded that McCrea's remarks concerning the threatening notes and phone calls were inadmissible. The court ruled that the prejudicial impact of those statements outweighed their probative value because there was no evidence that the defendant was responsible for the threats.[7] The trial court allowed the state to introduce Lawrence's testimony that McCrea

---

[6] On the basis of the record, it is unclear whether the reference to "her" is a typographical error. If it is not, it is not clear whom McCrea said she wanted to help. Neither party's appellate brief explains this remark.

[7] The state did not appeal the trial court's decision in light of our decision in State v. Walker, 214 Conn. 122, 129, 571 A.2d 686 (1990). We therefore will not address the trial court's ruling in this regard further.

was afraid, however, for the limited purpose of impeaching McCrea's credibility. The court found that the probative value of testimony concerning McCrea's fear outweighed any prejudicial impact that testimony might have in light of McCrea's testimony compared to her prior statement and "the appearance she made on the stand."

After Lawrence testified, the court gave the following limiting instruction to the jury: "Ladies and gentlemen, the testimony that Mrs. Lawrence just gave was offered by the State for such weight as you feel it's entitled to bearing on the subject of the credibility, the believability, of Pamela McCrea when she testified yesterday. That was the purpose which the State offered that testimony for what consideration you feel it's entitled to bearing on her, Pamela McCrea's, credibility, believability, as a witness as she testified here yesterday. That's the purpose of that evidence."

The defendant claims that Lawrence's testimony was inadmissible hearsay and that its prejudicial impact outweighed its probative value. He asserts that the testimony gave "the impression that Miss McCrea's testimony under oath was false," even though McCrea could have meant that she "wanted to tell the truth, said truth being that Rasheem had killed Mr. Mabery."[8] We disagree.

A witness may be impeached for motive, interest, bias or prejudice by cross-examination or by the introduction of extrinsic evidence. *State* v. *Shipman,* 195 Conn. 160, 163, 486 A.2d 1130 (1985); *State* v. *Townsend,* 167 Conn. 539, 560, 356 A.2d 125, cert. denied, 423 U.S. 846, 96 S. Ct. 84, 46 L. Ed. 2d 67 (1975); C. McCor-

---

[8] The defendant does not argue that the state failed to lay a proper foundation before it offered testimony of McCrea's bias and motive by a statement made out of court. See *State* v. *Townsend,* 167 Conn. 539, 560, 356 A.2d 125, cert. denied, 423 U.S. 846, 96 S. Ct. 84, 46 L. Ed. 2d 67 (1975).

mick, Evidence (3d Ed.) § 34, p. 73. Such an examination "for the purpose of eliciting facts which tend to show motive, interest, bias or prejudice 'is a substantial legal right which may not be abrogated or abridged at the discretion of the court. . . . ' *State* v. *Luzzi,* 147 Conn. 40, 46–47, 156 A.2d 505 (1959)." *State* v. *Shipman,* supra. While "proof of the main facts is a matter of right . . . the extent of the proof of details lies in the court's discretion. See 3A Wigmore, Evidence (Chadbourn Rev.) § 951, p. 797 n.2." Id.

" 'Pursuant to the rule permitting explanations of prior inconsistent statements, it is generally held that evidence of threats to a witness or fear on the part of a witness, in order to explain an inconsistency, is admissible in criminal cases . . . even if the threats or fear have not been linked to the defendant. (Citations omitted.)' *Washington* v. *State,* 293 Md. 465, 470, 445 A.2d 684 (1982)." *State* v. *Walker,* 214 Conn. 122, 130–31, 571 A.2d 686 (1990).

In this instance, although the trial court did not allow the evidence of threats directed at McCrea to be admitted into evidence, it did allow her statement to Lawrence that she was afraid in order to explain the discrepancy between her trial testimony and her prior inconsistent statement. The trial court admitted Lawrence's testimony as to McCrea's fear to allow the state to demonstrate the reason for McCrea's trial testimony. " 'The scope and extent of the explanation for the conduct or inconsistent statements is a matter within the discretion of the trial court and we may reverse only upon a finding of abuse of that discretion. *State* v. *Charles,* 525 S.W.2d 360, 363 (Mo. App. 1975).' *State* v. *May,* 587 S.W.2d 331, 336 (Mo. App. 1979)." *State* v. *Walker,* supra, 130.

Lawrence's testimony was offered for the limited purpose of impeaching McCrea's credibility. Because

it was not offered for the truth of the matter asserted therein, it was not hearsay. The testimony was offered to show that McCrea was afraid and therefore had a motive to testify falsely. While the defendant now complains that Lawrence's testimony was ambiguous, he never explored those ambiguities with the witness at trial. Having failed to do so, he cannot now claim that the ambiguity of the statement prevents its admission into evidence. The testimony was not hearsay. It was relevant to show McCrea's motive for testifying as she did, and it was not so prejudicial as to warrant its exclusion. On the basis of this record we cannot conclude that the trial court abused its discretion by admitting Lawrence's testimony into evidence.

The judgment of the trial court is affirmed.

In this opinion the other justices concurred.