IN RE BASSEL C.*
(12186)

DUPONT, C. J., O'CONNELL and LAVERY, Js.

---

\* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 4166B.2, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued September 30—decision released November 23, 1993

*Michael K. Courtney,* assistant public defender, for the appellant (respondent).

*John H. Kearney,* state's advocate, for the appellee (petitioner).

LAVERY, J. The juvenile respondent, Bassel C., appeals from the order of the Superior Court for juvenile matters transferring his case to the regular criminal docket[1] on the basis of a finding of probable cause

---

[1] General Statutes § 46b-127 provides in pertinent part: "The court shall transfer to the regular criminal docket of the superior court from the docket for juvenile matters: (1) Any child referred for the commission of a murder under sections 53a-54a to 53a-54d, inclusive, provided any such murder was committed after such child attained the age of fourteen years . . . . No such transfer shall be valid unless, prior thereto, the court has made written findings, after a hearing, that there is probable cause to believe that the child has committed the act for which he is charged. At such hearing, the child shall have the right to counsel and to confront the witnesses against him. The procedures provided in section 54-46a shall apply at such

that he committed murder in violation of General Statutes § 53a-54a[2] and felony murder in violation of General Statutes § 53a-54c.[3] The respondent claims that the trial court (1) based its finding of probable cause for the transfer on insufficient evidence, (2) improperly admitted prior inconsistent statements of two witnesses and (3) violated the respondent's federal and state constitutional rights to confront the witnesses against him. We affirm the trial court's determination.

The respondent, age fourteen, was arrested on September 15, 1992, on suspicion of murdering Michael Samaha in Danbury five days earlier. The state filed a delinquency petition in Superior Court for juvenile matters against the respondent, alleging the serious juvenile offenses of murder in violation of § 53a-54a and felony murder in violation of § 53a-54c. The state then moved to transfer the respondent's case to the regular criminal docket pursuant to General Statutes § 46b-127.[4]

hearing, except that the child shall have the right to move to suppress any admission made by him on the ground that it was obtained in violation of the provisions of subsection (a) of section 46b-137 and to obtain discovery of exculpatory information. An order by the court under this section transferring a child from the docket for juvenile matters to the regular criminal docket of the superior court shall be a final judgment for purposes of appeal. Upon the effectuation of the transfer, such child shall stand trial and be sentenced, if convicted, as if he were sixteen years of age . . . . A child who has been transferred may enter a guilty plea to a lesser offense if the court finds that such plea is made knowingly and voluntarily. Any child transferred to the regular criminal docket who pleads guilty to a lesser offense shall not resume his status as a juvenile regarding said offense. If the action is dismissed or nolled or if such child is found not guilty of the charge for which he was transferred, the child shall resume his status as a juvenile until he attains the age of sixteen years."

[2] General Statutes § 53a-54a (a) provides in pertinent part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person . . . ."

[3] General Statutes § 53a-54c provides in pertinent part: "A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery . . . and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants . . . ."

[4] See footnote 1.

As required, an evidentiary hearing was held to determine whether probable cause existed to transfer the respondent's case. The issues on appeal relate solely to two of the witnesses presented by the state at that hearing, Timothy Mourning and Elisha Council. Mourning testified that he had seen the respondent with a pistol similar to the murder weapon on numerous occasions, including hours before the murder. He also stated that he saw the respondent near the site of the homicide shortly before and after the murder. Mourning remembered greeting the respondent with "What's up?" in their encounter after the murder. Mourning claimed, however, both that he did not remember the respondent's answer and that he was unaware whether the respondent had replied at all.

Council testified that she knew the victim and saw him immediately before the murder in the alley where he was killed. She further stated that she was standing on an exterior balcony overlooking the crime scene at the time of the murder. Council testified that three men approached the victim and demanded money. After hearing what she thought was someone being struck with a bottle, she testified that she saw two of the men hovering over the victim, one strangling him. The other man then shot him, twice. She stated, at first, that she could identify the three men but recanted after voir dire by the respondent and claimed that she was unable to identify them.

Both witnesses had given investigating officers written statements that conflicted with their testimony. Two days after the murder, Mourning had told officers that the respondent replied to Mourning's greeting by saying, "I just killed a guy." Council gave three statements, in varying degrees of detail, within twenty-four hours of the killing. In the first statement, she admitted that she knew the killers but was too frightened to reveal their identities. In the second, she reported

her belief that one of the three men came from Bridge-port. In the third statement, written in her own hand, she identified the respondent as one of the three men she saw commit robbery and murder.

All of these witnesses' prior inconsistent statements were admitted under *State* v. *Whelan,* 200 Conn. 743, 748–49, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986). On the basis of those statements and all the other evidence, the court found probable cause to believe that the respondent had committed murder and felony murder. The court transferred the respondent to the regular criminal docket.

I

The trial court based its finding of probable cause, at least in part, on the prior inconsistent statements of Mourning and Council. The respondent claims that the trial court improperly admitted these statements.

Prior inconsistent statements of nonparty witnesses are hearsay and, generally, inadmissible to prove the truth of the matters they assert. *State* v. *Hopkins,* 222 Conn. 117, 122–23, 609 A.2d 236 (1992). In *Whelan,* however, our Supreme Court adopted an exception to this rule allowing substantive use of a prior inconsistent "statement of a nonparty witness if the declarant: (1) signed the statement; (2) had personal knowledge of the facts set forth in [the] statement; and (3) testifies at trial and is subject to cross-examination." *State* v. *Borrelli,* 227 Conn. 153, 158–59, 629 A.2d 1105 (1993). Prior inconsistent statements are admissible only "where the likelihood of fabrication is slight and the risk of coercion, influence or deception is greatly reduced." *State* v. *Grant,* 221 Conn. 93, 100, 602 A.2d 581 (1992); see also *State* v. *Borrelli,* supra, 160–61; *State* v. *Hopkins,* supra, 126; *State* v. *Green,* 16 Conn. App. 390, 397, 547 A.2d 916, cert. denied, 210 Conn. 802, 553 A.2d 616 (1988). The trial court must reason-

ably find sufficient indicia of reliability in the circumstances surrounding the statement to admit it substantively. *State* v. *Borrelli,* supra, 160. " 'It is the trial court's responsibility to weigh the reliability of each statement on a case-by-case basis.' " Id., 161, quoting *State* v. *Hopkins,* supra.

We begin by noting that trial courts have broad discretion in admitting evidence under *Whelan. State* v. *Buster,* 27 Conn. App. 263, 271, 606 A.2d 9 (1992), aff'd, 224 Conn. 546, 620 A.2d 110 (1993). When a trial court's evidentiary rulings are challenged, they are accorded great deference and will be disturbed on appeal only on a clear showing of abuse of discretion. *State* v. *Alvarez,* 216 Conn. 301, 319, 579 A.2d 515 (1990); *State* v. *Buster,* supra.

In the present action, the respondent concedes that the prior inconsistent statements met the three initial requirements of *Whelan:* both Mourning and Council signed all of their statements; both witnesses had personal knowledge of the facts therein; both witnesses were cross-examined. The respondent, however, challenges the trial court's ruling that the statements were reliable.

Our review of the record convinces us that the trial court did not abuse its discretion by admitting Mourning's prior statement. The following conditions, under which Mourning gave his statement, support the trial court's finding of reliability. First, the statement was given two days after the crime, "long before the witness' memory might have faded." *State* v. *Whelan,* supra, 754. Second, and perhaps most important, Mourning's statement was not " 'given in response to leading questions, which are laden with facts to which the witness has merely answered with a yes or no.' " *State* v. *Borrelli,* supra, 160, quoting *State* v. *Hopkins,* supra, 125. Third, Mourning signed the statement and

initialed every page after reading it. *State* v. *Borrelli,* supra. Fourth, there was ample corroborative testimony. Another witness, Terrell Staton, testified that he saw the respondent with a gun resembling the murder weapon near the murder scene shortly before the crime. Finally, most of Mourning's testimony was consistent with his written statement. Corroborative evidence enhances the reliability of a prior inconsistent statement. Id., 161.

Mourning recanted under cross-examination and claimed his statement resulted from police intimidation and coercion. This testimony came, however, in response to leading questions laden with facts to which he merely assented. See id., 160. The respondent claims that, absent contradictory evidence, the trial court was required to find that the police obtained Mourning's statement through coercion and intimidation. A trier is not required, however, to believe testimony merely because it is not directly contradicted. *Johnson* v. *Fuller,* 190 Conn. 552, 556, 461 A.2d 988 (1983). After hearing the evidence and observing the witness on the stand, the trial court was unpersuaded that Mourning's statement resulted from coercion or influence. "It is uniquely the province of the trier of fact, in this case the judge, to determine the import of the evidence by gauging the credibility of the witnesses." *Berry* v. *Loiseau,* 223 Conn. 786, 821, 614 A.2d 414 (1992). The respondent has failed to demonstrate that the court abused its discretion by admitting Mourning's prior inconsistent statement under *Whelan.*

Our review of the record also reveals that the trial court did not abuse its discretion by admitting Council's prior statements. The circumstances surrounding her statements support the trial court's finding of reliability. All of her statements were made within twenty-four hours of the murder, long before her memory might have faded. *State* v. *Borrelli,* supra, 160. Her

statements were narratives, not responses to leading questions laden with facts to which she merely assented. Id. Council's testimony regarding the essential facts of the crime was largely identical to her statements. This continuity over time increases the likelihood that the earlier statements were reliable. Finally, Council wrote the statement in which she identified the respondent in her own hand.

Council also recanted at the hearing, claiming that her statements resulted from police coercion and intimidation and her own intoxication and exhaustion. It is important that, on direct examination, she stated that her reluctance to identify the murderers resulted from her mother's instructions to "shut [her] mouth." Her claims of police misconduct and her intoxication came only in response to leading questions. See id. Again, "[i]t is uniquely the province of the trier of fact, in this case the judge, to determine the import of the evidence by gauging the credibility of the witnesses." *Berry* v. *Loiseau,* supra. The respondent has failed to demonstrate that the trial court abused its discretion by admitting Council's prior inconsistent statements.

## II

The respondent next claims that the evidence adduced at the hearing was insufficient to establish probable cause. "The quantum of evidence necessary to establish probable cause at a preliminary hearing is less than the quantum necessary to establish proof beyond a reasonable doubt at trial." (Internal quotation marks omitted.) *In re Keijam T.,* 221 Conn. 109, 115, 602 A.2d 967 (1992). Probable cause exists where the government's evidence would warrant a person of reasonable caution to believe that the accused committed the crime. Id., 115–16; *In re Ralph M.,* 211 Conn. 289, 316–17, 559 A.2d 179 (1989). "The quantum of evidence necessary to establish probable cause exceeds

mere suspicion, but is substantially less than that required for conviction. Our cases have made clear that [t]here is often a fine line between mere suspicion and probable cause, and [t]hat line necessarily must be drawn by an act of judgment formed in light of . . . all the circumstances. . . .'' (Citations omitted; internal quotation marks omitted.) *In re Keijam T.,* supra.

"When reviewing a trial court's finding of probable cause made for purposes of a transfer pursuant to § 46b-127, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. . . . Where the factual basis of the court's decision is challenged we must determine whether the facts set out in the . . . decision are supported by the evidence or whether, in light of . . . the whole record, those facts are clearly erroneous. . . . As in any case involving the challenge to a factual finding, we view the evidence and the permissible inferences therefrom in the light most favorable to sustaining the trial court's determination of probable cause. . . .'' (Citations omitted; internal quotation marks omitted.) Id., 116.

In this case, the trial court found probable cause to believe that the respondent (1) acted with intent to cause the victim's death, (2) caused the victim's death, (3) committed robbery, and (4) caused the victim's death in the course and furtherance of the robbery. The record amply supports these findings. Eyewitness testimony placed the respondent at the murder scene immediately prior to and after the murder. The respondent was seen carrying a pistol similar to the murder weapon shortly before the murder. Council, who was standing approximately ten feet from the murder, identified the respondent less than twenty-four hours after the crime as one of three men who robbed and murdered the victim. The respondent admitted to Mourning that he had just shot someone moments after

Mourning heard two gunshots. In sum, the record substantiates the trial court's finding of probable cause.

### III

Finally, the respondent claims that admission of the prior inconsistent statements of Council and Mourning violated his right to confront the witnesses against him as guaranteed by the federal and state constitutions. This claim, however, defies controlling precedent. Our Supreme Court addressed this issue in *State* v. *Alvarez,* supra, 315–16. In that case, the court noted that "the Confrontation Clause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective whatever way, and to whatever extent, the defense might wish." (Internal quotation marks omitted.) Id. Here, as in *Alvarez,* the record reveals that the respondent had an unrestricted opportunity to cross-examine the witness. "The constitutional standard was therefore satisfied." Id., 316.

The order of transfer is affirmed.

In this opinion the other judges concurred.