**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Farrell BEGAY, Defendant–Appellant.**

**No. 87–1052.**

United States Court of Appeals, Tenth Circuit.

Nov. 23, 1987.

Tova Indritz, Federal Public Defender, Albuquerque, N.M., for defendant-appellant.

Robert Gorence, Asst. U.S. Atty. (William Lutz, U.S. Atty., with him on brief), Albuquerque, N.M., for plaintiff-appellee.

Before LOGAN, ANDERSON and TACHA, Circuit Judges.

TACHA, Circuit Judge.

Farrell Begay was charged with second-degree murder in the death of Walter Nakai. Upon a jury verdict, Begay was convicted of involuntary manslaughter and appeals on two grounds. First, he contends that an involuntary manslaughter instruction is inconsistent with a defense of self-defense and, therefore, should not have been given to the jury. Second, he argues that the trial court abused its discretion in refusing to grant a mistrial based upon

certain of the prosecutor's questions. Because there is sufficient evidence in the record to support the involuntary manslaughter instruction and because the prosecutor's questions, though possibly improper, were not prejudicial, we affirm.

## I.

On the night of August 1, 1986, Walter Nakai and Farrell Begay attended a squaw dance in Beclabito, New Mexico, within the boundaries of the Navajo Indian Reservation. Nakai and Begay arrived separately, but eventually were socializing in the same group. Both consumed alcoholic beverages; Nakai became drunk, but Begay did not. After they had been drinking and socializing for a while, Nakai began to roam around the area, shoving and pushing the men he encountered. Eventually, he began to hit and shove Begay; there is no dispute that Nakai was the aggressor. In the ensuing scuffle, Begay drew a hunting knife and Nakai was stabbed. Nakai died from internal bleeding and organ damage caused by stab wounds to his chest and abdomen.

The United States charged Begay with second-degree murder. Begay argued that the killing was justified as self-defense. At the trial's conclusion, the court instructed the jury on the lesser included offenses of voluntary and involuntary manslaughter, in addition to second-degree murder and self-defense. The jury returned a guilty verdict on the involuntary manslaughter charge. Begay was sentenced to two years imprisonment.

## II.

■ Begay contends that the involuntary manslaughter instruction should not have been given. "[T]he trial court instructs the jury in accordance with the evidence and the applicable law whether requested or not." *United States v. Cooper,* 812 F.2d 1283, 1285 (10th Cir.1987). "The decision of whether there is enough evidence to justify a lesser included offense charge rests within the sound discretion of the trial judge." *United States v. Chapman,* 615 F.2d 1294, 1298 (10th Cir.), *cert.*

*denied,* 446 U.S. 967, 100 S.Ct. 2947, 64 L.Ed.2d 827 (1980). This court has said that an involuntary manslaughter instruction is inconsistent with the theory of self-defense where a defendant pursuing a self-defense theory requested such an instruction and the trial court refused to give it. *United States v. Smith,* 521 F.2d 374 (10th Cir.1975). *Smith* stands only for the proposition that a trial court is not *required* to give an involuntary manslaughter instruction in the face of a self-defense theory. Although such an instruction is not *required,* a trial court is not *precluded* from giving one when the evidence so warrants. Whether self-defense and involuntary manslaughter are inconsistent depends upon the circumstances of the alleged offense as demonstrated by the evidence presented at trial.

Involuntary manslaughter is "the unlawful killing of a human being without malice ... [i]n the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death." 18 U.S.C. § 1112(a). "The offense thus defined can occur in circumstances that would support a defense of self-defense." *United States v. Manuel,* 706 F.2d 908, 915 (9th Cir.1983). "If the defendant attempts to use nondeadly force, but does so in a criminally negligent manner and death results, then both involuntary manslaughter and self-defense instructions would be warranted, particularly if there is any disputed fact issue concerning the quantum of danger reasonably perceived by the defendant." *Id.*

The Eighth Circuit used this approach to uphold a trial court's decision to instruct on both involuntary manslaughter and self-defense in *United States v. Iron Shield,* 697 F.2d 845 (8th Cir.1983). In *Iron Shield,* the defendant was charged with second-degree murder after her husband died from a knife wound that she admittedly delivered to his chest. She pleaded self-defense, yet, the trial court instructed the jury on involuntary manslaughter. The defendant was convicted of that offense and appealed, arguing that the lessor included instruction

should not have been given. The appellate court held that evidence presented at trial supported the trial court's decision to give the involuntary manslaughter instruction. While noting that "[s]uch an instruction arguably abrogates the complete nature of self-defense as a defense," the court concluded that the instruction was permissible in this instance because the defendant's "assertion of self-defense was equivocal at best." *Id.* at 847.

Several considerations led the court to characterize the defendant's self-defense assertion as equivocal. The defense counsel argued at trial that "even though the death was an *accident*, [the defendant] was entitled ... to protect herself." *Id.* (emphasis original). Counsel also argued in closing, and a pathologist testified at trial, that the decedent could have run into the knife. *Id.* Moreover, the defendant herself testified that she did not intend to kill her husband, but meant only to brandish the knife to frighten him from their home. *Id.* at 846. The court concluded that this testimony "put in issue whether [the defendant] might have been guilty of gross negligence in so brandishing the knife, and whether [this] negligence could be sufficient to convict her under that portion of § 1112(a) which refers to a killing 'in the commission ... without due caution and circumspection, of a lawful act which might produce death.' " *Id.* at 847–48. While *Iron Shield* differs from the present case in some respects, the similarities between the cases persuade us that the district court here, like the trial court in *Iron Shield,* was within its discretion when it instructed the jury on involuntary manslaughter.

■ The defense theory in this case was that while Begay intentionally delivered the stab wounds that caused Nakai's death, he was legally entitled to do so as a means of self-defense. The prosecutor also argued that the stabbing was intentional, but disputed Begay's self-defense assertion. Begay argues that the involuntary manslaughter instruction was improper because neither party presented it as a theory of their case. That contention fails to rec-

ognize that "[i]n determining whether to instruct on [a] lesser offense, the court must take into account the possibility that the jury might ... make findings different from the version set forth in anyone's testimony." 2 C. Wright, *Federal Practice and Procedure* § 498 at 799 (2d ed. 1982). After evaluating the evidence presented at trial, the court correctly anticipated that the jury could reach a result at variance with both parties' theory of the case, and it properly instructed on involuntary manslaughter, as well as on second-degree murder and self-defense. The evidence supporting the trial court's decision is found within the defendant's own testimony.

During the prosecutor's cross-examination of Begay, the following testimony was offered:

A. I didn't mean to, to kill him. I just meant for him to back off. I didn't think I stabbed him that hard. I thought he, that he would back off as soon as, you know, he saw the knife.

Q. You never told him to back off, though, did you?

A. I told him I didn't want to fight and I was backing off. I didn't have to tell him. I was walking back.

Furthermore, Begay was asked:

Q. You didn't tell Walter, "Lay off me, Walter, because I have this knife," did you?

A. No.

Q. At that point, you just—you took it out and stabbed him right away.

A. I took it out and I poked him....

Q. What do you mean by the word "poke"?

A. I just pulled it forward and he ran into it because he was coming at me, and he looked at himself and said, "That didn't hurt" and started throwing more punches at me and I had to block myself.

Q. Did you know at the time that you poked Walter, that the knife had actually gone in—that you'd stabbed him with it?

A. No.

Based on the foregoing, the jury could have concluded that Begay did not intend to stab Nakai and that his testimony, like the testimony in *Iron Shield*, "put in issue whether [he] might have been guilty of gross negligence in so brandishing the knife, and whether [this] negligence could be sufficient to convict [him] under that portion of § 1112(a) which refers to a killing 'in the commission ... of a lawful act which might produce death.'" 697 F.2d at 847–48. Begay's testimony was sufficient to support the involuntary manslaughter instruction.

### III.

■ Begay also argues that the trial court erred in not granting a mistrial based on the government's questions to a witness about the defendant's previous legal problems. On cross-examination of the defendant's first witness, Leo Redhouse, the prosecutor asked whether the witness was aware of Begay's "prior scrapes with the law." After receiving a negative response, the prosecutor asked, "You're not aware of any prior problems at all?" Redhouse said that what he knew was based on hearsay. The defendant then objected on the ground that the question improperly addressed the defendant's character. In a bench conference, the court did not address the substance of the defendant's objection, but instead said: "He says all he has is second-hand hearsay, so he can't testify to that." When the proceedings recommenced in open court, the prosecutor asked, "Just to understand your last answer, Mr. Redhouse, you said you have no personal knowledge of any prior problems that the Defendant had with the law?" Redhouse responded, "No sir." The next morning, the defendant moved for a mistrial based on the assertedly improper questions; the trial court denied the motion.

"A trial court has broad discretion [in determining] whether a mistrial is warranted when an improper question is asked by the government." *United States v. Pinto*, 755 F.2d 150, 153 (10th Cir.1985). "In reviewing the trial court's determination, the impact of the improper question must be considered in the context of the entire tri-

al." *Id.* " '[N]ot all misconduct or improper argument ... will require granting a new trial or a reversal on appeal. It is only when such conduct can present a question whether there is reason to believe that it influenced the jury's verdict that the failure to take appropriate steps to remove it will warrant a reversal.'" *United States v. James*, 728 F.2d 465, 468 (10th Cir.) (quoting *Marks v. United States*, 260 F.2d 377, 383 (10th Cir.1958), *cert. denied*, 358 U.S. 929, 79 S.Ct. 315, 3 L.Ed.2d 302 (1959)), *cert. denied*, 469 U.S. 826, 105 S.Ct. 106, 83 L.Ed.2d 50 (1984). That standard has not been met here.

Although the prosecutor's question may have been improper, we cannot say that there is reason to believe that the question influenced the jury's verdict when it is viewed in the context of the entire trial. The witness did not say that the defendant had any prior scrapes with the law. Additionally, the court instructed the jury that it was only to consider evidence presented and that counsel's arguments or comments did not constitute evidence. Moreover, the prosecutor made no further reference to the defendant's previous legal problems. Given the isolated nature of the reference, we conclude that even assuming that the question was improper, it fails to meet the standard set out in *James*. The court did not, therefore, abuse its discretion in denying the defendant's motion for a mistrial based on the question.

AFFIRMED.