865 F.2d 1260
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Anthony G. BATTLE, Defendant-Appellant.
 No. 88-5028.
 United States Court of Appeals, Fourth Circuit.
 Argued: Oct. 6, 1988.
Decided: Dec. 19, 1988.
 
 Edwin Chrisco Walker, Assistant Federal Public Defender (William E. Martin, Federal Public Defender, on brief), for appellant.
 Joseph C. Wyderko (Margaret Person Currin, United States Attorney, on brief), for appellee.
 Before WIDENER, JAMES DICKSON PHILLIPS and ERVIN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Anthony G. Battle appeals his conviction and sentence for first-degree felony murder in violation of 18 U.S.C. Sec. 1111(a), aggravated sexual abuse in violation of 18 U.S.C. Sec. 2241(a) and second-degree murder in violation of 18 U.S.C. Sec. 1111. We affirm his convictions but remand the case for resentencing in accordance with this opinion.
 
 
 2
 During the early morning hours of Monday, March 9, 1987, Lance Corporal Minnie Foreman was stabbed to death in her barrack room on the Marine Corps Base at Camp Lejeune, North Carolina. Her husband, Anthony G. Battle, was later indicted and convicted for her murder. The evidence at Battle's trial showed that Miss Foreman and Battle were married in October 1986 and had one child. In the months prior to Miss Foreman's death, their marital relationship had deteriorated, and Miss Foreman had decided to obtain a divorce. The evidence revealed at least two previous assaults by Battle upon his wife. One of these incidents occurred less than 48 hours before his wife's death, and resulted in Battle being arrested and charged with assault.
 
 
 3
 On the night of Miss Foreman's death, she had returned to her barrack room at Camp Lejeune around 2 a.m. Some time after 2 a.m., Toure Clark left his room on the second floor of the same barrack to mail some letters. Clark said he heard a loud scream and then a second scream and the words "help me, help me, rape." Several other Marines present in the barrack that night also heard screams and pleas for help, but no one else heard the word "rape." Several of the Marines ran to Miss Foreman's door after hearing the screams, but found it locked. The military police were summoned, and the room was opened. One of the Marines testified that while waiting for the room to be opened she heard shuffling noises in the room and what sounded like someone scooting across the floor putting on a pair of pants.
 
 
 4
 When the military police opened the door, they found Miss Foreman lying on the floor dead with multiple stab wounds. She was naked from the waist down with her legs spread open. A butcher knife was lying next to her head. Battle was lying on the floor next to her, also with multiple stab wounds. Battle was taken to a base hospital, where he was treated for five chest wounds and one wound in the abdomen.
 
 
 5
 Navy Investigative Service agents twice questioned Battle while he was in the hospital, once for about five minutes approximately 12 hours after his surgery and then again for about 55 minutes on the next day, March 10. Before the second questioning on March 10, the agents sought and received permission from Battle's physician to speak with the appellant. The agents informed Battle that he was a suspect in his wife's death and read him the requisite warnings. Battle acknowledged that he understood these rights and agreed to talk with the agents.
 
 
 6
 During the questioning, Battle told the agents that he had gone to Miss Foreman's room to discuss child visitation privileges and to attempt to convince her to drop the assault charges filed against him that weekend. He said that his wife was wearing a top and panties when he entered the room. According to Battle, he and his wife began arguing and when she walked toward the door he grabbed her, placed his hand over her mouth, and attempted to take her back to the bed. Battle said he thought he saw Miss Foreman pick up something and then swing her left hand at him. He remembered feeling a stinging sensation in his abdomen. He said he also remembered being on the floor with his wife. Battle also told the agents, "I did it; I did it." Battle did not testify at trial or call any witnesses or present any evidence.
 
 
 7
 The autopsy of Miss Foreman showed that she had been stabbed eight times in the upper torso. Five of these wounds penetrated deeply enough to cause her to bleed to death. The autopsy also revealed that Miss Foreman's hands and arms were covered with a number of defensive wounds of the type suffered when a person is defending herself from an attack. Forensic tests performed on, and examination of, Miss Foreman's body revealed no physical evidence that she had been sexually assaulted.
 
 
 8
 A forensic pathologist testified that Battle's wounds were consistent with having been self-inflicted. Battle was wearing briefs, a pair of gym shorts, a jersey and a pair of blue jeans when he was brought to the hospital. The pathologist testified that Battle's gym shorts contained both Battle's blood and that of his wife, while Battle's pants contained only his wife's blood. The pathologist, however, found none of Miss Foreman's blood present on Battle's pants at the spot where her blood was found on his gym shorts, leading to the inference that Battle's pants were removed at some point during the attack.
 
 
 9
 Battle raises several issues on appeal. First, he contends that the district court erred in failing to suppress his second statement to the NIS agents because he did not knowingly and intelligently waive his Fifth Amendment rights before making the statement. The district court's order denying Battle's suppression motion found that Battle was not in police custody when he was questioned in the hospital and, furthermore, that he had made a knowing and intelligent waiver of his Fifth Amendment rights. Both of these issues are largely determinations of fact and will not be disturbed unless clearly erroneous. United States v. Smith, 608 F.2d 1011, 1012-13 (4th Cir.1979).
 
 
 10
 The district court made a very detailed examination of the facts and circumstances surrounding Battle's statements to the NIS agents in its order. The court did suppress Battle's first statement, which was made within hours of surgery, due to his inability to freely and voluntarily answer the agents' questions. The court, however, denied appellant's motion to suppress his later March 10th statement. We cannot find this ruling clearly erroneous. Battle's physician, attending nurses and the questioning agents all testified that the appellant was fully capable of understanding and responding to the agents' questions. Furthermore, Battle was read his rights, acknowledged understanding them and voluntarily waived these rights.
 
 
 11
 Battle also contends that the district court erred in allowing Toure Clark's testimony that near the time Miss Foreman was killed he heard someone scream "help me, help me, rape." He argues that the statement's probative value was outweighed by the danger of unfair prejudice and, therefore, the statement should have been inadmissible under Rule 403 of the Federal Rules of Evidence. An evidentiary ruling based on Rule 403 is within the sound discretion of the court and will not be disturbed unless the appellant can show that the court abused its discretion in allowing the evidence to be admitted. United States v. Masters, 622 F.2d 83, 87-88 (4th Cir.1980). To be inadmissible under Rule 403, the evidence must be unduly prejudicial in the sense that it creates a genuine risk of exciting the jury to irrational behavior, Id. at 87, and the prejudicial effect of the evidence must substantially outweigh its probative value. United States v. Black, 692 F.2d 314, 316 (4th Cir.1982).
 
 
 12
 We agree that Clark's testimony concerning the cries he heard does prejudice the appellant, but only in the sense that it tends to prove the government's claim that he attempted to sexually assault Miss Foreman, as would any relevant evidence the government put forward on this issue. The appellant's burden, however, is to show that the evidence would unduly prejudice him, and that the danger of its admission would outweigh its probative value. Battle argues that Clark's testimony was "[o]ne of the most damaging pieces of evidence against Mr. Battle," not that the evidence inflamed the jury or aroused its emotions to the point of irrational behavior. Thus, his contention on this issue cannot be upheld, and, in any event, the record does not support any inflammatory context in which this evidence was received.
 
 
 13
 Appellant also contends that the trial court erred in failing to grant his post-conviction motion for acquittal on the aggravated sexual assault and the felony murder charges due to insufficiency of the evidence. The district court's ruling on this motion is subject to the same standard of review applicable to a claim that the evidence is insufficient to sustain a jury's verdict. United States v. Steed, 674 F.2d 284, 286 (4th Cir.) (en banc), cert. denied, 459 U.S. 829 (1982). Thus, the question is whether, taking the view most favorable to the government, there is substantial evidence from which any rational trier of fact could find guilt beyond a reasonable doubt. Id. at 286.
 
 
 14
 While there is no direct evidence that the appellant caused or attempted to cause Miss Foreman to engage in a sexual act, there is circumstantial evidence to that effect which is weighed along with all the other evidence in the case. See United States v. Tresvant, 677 F.2d 1018, 1021-22 (4th Cir.1982). Thus, circumstantial evidence may be sufficient to support a guilty verdict even though it does not exclude every reasonable hypothesis consistent with innocence. United States v. George, 568 F.2d 1064, 1069 (4th Cir.1978). We are of opinion that ample evidence was presented by the government in the form of the testimony of Clark, the appellant's own statement, the physical condition and location of Miss Foreman's body and the evidence that Battle's pants were removed some time during the attack to support his conviction for aggravated sexual abuse and for felony murder.
 
 
 15
 Battle further contends that the district court erred by refusing his proposed instructions on "imperfect self-defense" in an effort to reduce his crime from murder to manslaughter. We find no reversible error here either. The district judge adequately instructed the jury on both the required concept of malice and on the crime of manslaughter. Thus, the jury instructions adequately conveyed to the jury the law which supported Battle's theory of defense, see United States v. Dornhofer, slip op. 88-5518 at 10 (4th Cir. Oct. 17, 1988), and any error arguably committed was harmless.
 
 
 16
 We do, however, remand this case to the district court for resentencing. The appellant was sentenced to life imprisonment on each of three counts: first-degree felony murder, aggravated sexual abuse and second-degree murder. The life terms are to run concurrently, but the court also imposed a mandatory $50 special assessment on each count under 18 U.S.C. Sec. 3013; thus, the sentences are not truly concurrent in that the appellant must pay all three assessments. Ray v. United States, 55 U.S.L.W. 4662 (1987). Cumulative punishment may not be imposed for both first-degree felony murder and second-degree murder. Fuller v. United States, 407 F.2d 1199, 1224 (en banc) (D.C.Cir.1968). Nor may cumulative punishment be imposed for both first-degree felony murder and the underlying felony, aggravated sexual abuse. See Wiman v. Lockhart, 797 F.2d 666, 668 (8th Cir.) cert. denied, 479 U.S. 1021 (1986).
 
 
 17
 While we emphasize that each of the three convictions is valid, we remand this case to the district court for resentencing, and note that the government agrees that resentencing is required.
 
 
 18
 AFFIRMED IN PART AND REMANDED.