**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 11-4677**

───────────────

UNITED STATES OF AMERICA,

            Plaintiff - Appellee,

    v.

CHRISTOPHER A. DROTLEFF,

            Defendant - Appellant.

───────────────

**No. 11-4744**

───────────────

UNITED STATES OF AMERICA,

            Plaintiff - Appellee,

    v.

JUSTIN H. CANNON,

            Defendant - Appellant.

───────────────

Appeals from the United States District Court for the Eastern District of Virginia, at Norfolk. Robert G. Doumar, Senior District Judge. (2:10-cr-00001-RGD-FBS-2; 2:10-cr-00001-RGD-FBS-1)

───────────────

Argued: October 26, 2012       Decided: November 29, 2012

───────────────

Before NIEMEYER, MOTZ, and DAVIS, Circuit Judges.

Affirmed by unpublished per curiam opinion.

---

**ARGUED:** Trey R. Kelleter, VANDEVENTER BLACK, LLP, Norfolk, Virginia; Larry Mark Dash, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Norfolk, Virginia, for Appellants. Alan Mark Salsbury, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee. **ON BRIEF:** Michael S. Nachmanoff, Federal Public Defender, Alexandria, Virginia, Frances H. Pratt, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Norfolk, Virginia, for Appellant Cannon. Neil H. MacBride, United States Attorney, Alexandria, Virginia, Randy Stoker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia; Jay A. Bauer, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

---

Unpublished decisions are not binding precedent in this circuit.

PER CURIAM:

Pursuant to the Military Extraterritorial Jurisdiction Act ("MEJA"), the Government indicted Christopher Drotleff and Justin Cannon in the Eastern District of Virginia on crimes arising from an incident in Afghanistan. A jury convicted them of involuntary manslaughter. They appealed, contending that the court lacked jurisdiction over them and erred in instructing the jury. We affirm.

I.

Paravant, a subcontractor under a Department of Defense contract to perform various services in Afghanistan, employed Drotleff and Cannon as weapons instructors.

This case grows out of an automobile accident in Afghanistan on May 5, 2009. On that date, Drotleff, Cannon, and others traveled westbound on Jalalabad road in a convoy of two SUVs. Drotleff and Cannon occupied the rear SUV. The lead SUV was involved in an accident and its occupants were injured. At trial, the Government argued that the lead SUV swerved to avoid hitting a truck, while Drotleff and Cannon asserted that a small car hit the lead SUV from behind.

After the crash, Drotleff and Cannon stopped and exited their vehicle. A Toyota Corolla approached the accident scene going eastbound. According to Drotleff and Cannon, the Corolla

3

had caused the accident. They maintained that after hitting the lead SUV the Corolla turned around and rapidly drove toward them in a threatening manner. Drotleff and Cannon opened fire on the Corolla, hitting its driver and passenger and a pedestrian. The passenger and pedestrian later died from their injuries.

After the incident, Paravant and an Army investigator conducted accident investigations and took statements from Drotleff and Cannon. In these statements Drotleff and Cannon claim that they acted in self-defense, trying to stop the Corolla by firing at its lower portion and tires. Nevertheless, the Army's Criminal Investigation Division began a criminal investigation of them.

Paravant fired Drotleff and Cannon and they returned to the United States. The Government indicted them pursuant to MEJA, which provides federal courts with jurisdiction over individuals who commit crimes while employed by the Department of Defense abroad. See 18 U.S.C. §§ 3261(a)(1), 3267(1) (2006). Drotleff and Cannon unsuccessfully moved to dismiss the indictments on the ground that Congress lacked the authority to enact MEJA and that it was unconstitutional as applied to them. At trial, the district court instructed the jury, over Drotleff and Cannons' objections, on involuntary manslaughter and on false exculpatory statements. The jury convicted both Drotleff and Cannon of a

4

single count of involuntary manslaughter as to the car passenger. They timely noted this appeal.


## II.

Drotleff and Cannon continue to argue on appeal that federal courts lack jurisdiction over them because MEJA is unconstitutional, both facially and as-applied. In United States v. Brehm, 691 F.3d 547 (4th Cir. 2012), we recently upheld MEJA in the face of a constitutional challenge. Brehm requires us to reject the very similar constitutional challenge posed by Drotleff and Cannon here.


## III.

Alternatively, Drotleff and Cannon contend that the district court's jury instructions suffered from three defects, which merit reversal. We review the correctness of a jury instruction for abuse of discretion. United States v. Ebersole, 411 F.3d 517, 526 (4th Cir. 2005).

### A.

The district court sua sponte instructed the jury on involuntary manslaughter, a lesser-included offense of second-degree murder, for which the Government had charged Drotleff and Cannon. To justify a jury instruction on a lesser-included offense, "the proof of the element that differentiates the two

offenses must be sufficiently in dispute that the jury could rationally find the defendant guilty of the lesser offense but not guilty of the greater offense." United States v. Wright, 131 F.3d 1111, 1112 (4th Cir. 1997). Drotleff and Cannon maintain that the court erred in giving an involuntary manslaughter instruction because the facts cannot support a conviction for that offense. Specifically, they argue that since they intentionally applied deadly force they could not have committed involuntary manslaughter.

A defendant, who intentionally uses deadly force in an effort to defend himself but does not meet the requirements for self-defense, may commit voluntary, but not involuntary, manslaughter. See, e.g., United States v. Manuel, 706 F.2d 908, 915 (9th Cir. 1983). A defendant, who is entitled to use self-defense and intends to use non-deadly force but through failure to exercise due caution and circumspection causes the death of another, may commit involuntary manslaughter. Id. Drotleff and Cannon maintain that firing on an occupied vehicle necessarily involves the use of deadly force.

Their own argument in the district court forecloses that contention, for they themselves argued that they fired at the tires and lower portion of the Corolla in order to disable it and did not intend to kill or injure anyone. The jury reasonably could have found, as they maintained, that Drotleff

6

and Cannon did not intend to use deadly force. Accordingly, the district court did not err in giving an instruction on involuntary manslaughter.

B.

Drotleff and Cannon next challenge the content of the involuntary manslaughter instruction. First, they take issue with the court's statement that to convict a defendant of involuntary manslaughter the jury had to find that "the death charged occurred while the defendant was committing a lawful act -- that is, self-defense -- in an unlawful manner by failing to exercise due caution and circumspection in firing their weapons." Drotleff and Cannon note that justifiable self-defense is a complete defense that bars conviction. They argue that the instruction allowed the jury to find that they acted in self-defense but still convict them, while a finding of self-defense should have ended the inquiry. Further, they maintain that the instruction impermissibly grafts the requirements of "due caution and circumspection" onto the definition of self-defense.

These arguments fail. In evaluating the adequacy of jury instructions, a particular instruction "may not be judged in artificial isolation, but must be viewed in the context of the overall charge." Cupp v. Naughten, 414 U.S. 141, 147 (1973). Drotleff and Cannon ignore other language in the instructions

7

that clearly articulates the relationship between self-defense and involuntary manslaughter, relieving any concern that the jury might have been guided by their strained interpretation.

Additionally, Drotleff and Cannon argue that the involuntary manslaughter instruction impermissibly shifted to them the burden of proving self-defense. This argument also fails; the court had already given a separate instruction on self-defense in which it made clear that the Government always bears the burden of proving that a defendant did not act in justifiable self-defense.

C.

Finally, Drotleff and Cannon assert that the district court erred in giving the following instruction on false exculpatory statements:

> Statements knowingly and voluntarily made by a defendant upon being informed of an investigation may be considered by the jury. When a defendant voluntarily offers an explanation or voluntarily makes some statement tending to show his innocence and it is later shown that the defendant knew that this statement was false, the jury may consider this as showing a consciousness of guilt . . . .

Drotleff and Cannon made the statements at issue here in connection with investigations by Paravant and the Army, before being informed that a criminal investigation was underway. In those statements, Drotleff and Cannon indicate that the Corolla caused the accident and drove in a threatening manner and thus

8

suggest that they acted in self-defense. At trial, the Government presented evidence contradicting the statements. Drotleff and Cannon argue that an instruction on false exculpatory statements is appropriate only when a defendant makes an allegedly false statement to a law enforcement officer after being arrested or informed of a criminal investigation, and was thus improper here.

We need not address this argument because any error was harmless. There is no dispute that the allegedly false statements were admissible, and the Government would have been free to argue that they reflect consciousness of guilt in the absence of the court's instruction. Moreover, as the Government pointed out at oral argument, in finding Drotleff and Cannon guilty only of involuntary manslaughter, the jury appears to have credited their account that they shot at the Corolla in an attempt to disable it, rendering this instruction irrelevant.

IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.